# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) <br> ) <br>                 Plaintiff, ) <br> ) <br> vs. ) <br> ) <br> MICHAEL JENKINS, ) <br> ) <br>                 Defendant. ) <br> ) | Case No. 2:07-cr-00080-RCJ-PAL <br><br> **ORDER AND REPORT OF FINDINGS AND RECOMMENDATION** <br><br> (Mtn to Dismiss - Dkt. #95) <br> (Mtn for Joinder - Dkt. #97) |

This matter is before the court on Defendant Michael Jenkins' ("Jenkins") Motion to Dismiss Government's Case for Failure to Produce <u>Brady</u> Material; Alternative Motion to Suppress All Evidence Seized (Dkt. #95) filed on March 9, 2009. The court has considered the Motion, co-defendant Gary Columbo's Joinder (Dkt. #97), the government's Response (Dkt. #105), and Jenkins' Reply (Dkt. #113).

## BACKGROUND

Jenkins is charged in a five-count criminal Indictment returned by the grand jury on April 24, 2007 with (i) Conspiracy to Commit Securities Fraud and Wire Fraud in violation of 18 U.S.C. § 371; (ii) Wire Fraud in violation of 18 U.S.C. § 1343; (iii) Securities Fraud in violation of 15 U.S.C. § 78j (b); (iv) Fraudulent Interstate Securities Transactions in violation of 15 U.S.C. § 77g (a); and (v) Conspiracy to Commit Money Laundering and Engage in Monetary Transactions with Criminal Proceeds in violation of 19 U.S.C. § 1956(h). Jenkins was arraigned on May 10, 2007 and entered a plea of not guilty. On June 1, 2007, Jenkins filed a Motion to Designate Case as Complex and Continue Dates (Dkt. #21), which the court heard and entered a Scheduling Order (Dkt. #26), deeming this case complex within the meaning of 18 U.S.C. § 3161(h)(8)(B)(ii) and

/ / /

establishing pretrial motion deadlines.  Jenkins is set for trial on June 30, 2009 before the Honorable Robert C. Jones.

The Indictment alleges that Jenkins and his co-defendants engaged in a prime bank note scheme in which they promised various investors that they had the knowledge, skills, and positions to enable them to place sums of not less than ten million dollars in major banks as security for larger loans.  See Indictment (Dkt. #1) at ¶ 2.  They told potential and actual investors that their initial investments would be securely deposited in a major bank, and those deposits would be leveraged to purchase high-yield notes.  Id.  The Indictment alleges that investors were promised "exponential returns" on their investments.  Id.  These representations induced several investors to enter into investment contracts with the Defendants.  Id. at ¶ 4.  The Indictment alleges that the Defendants did not use the investors' funds as represented but converted the funds for their own use.  Id. at ¶ 5.

Prior to the Indictment's return, the Mesa County Sheriff's Office conducted an investigation of Jenkins regarding allegations of Sexual Assault of a Minor under Colorado state law.  In conjunction with that investigation, Mesa County Sheriff's Office obtained a search warrant to search Jenkins' home, located at 1138 Sundial Road in Grand Junction, Colorado (the "Colorado Warrant").  During pretrial proceedings, Jenkins requested the government turn over the Colorado Warrant, but the government did not comply because the Colorado Warrant–a local state warrant–was not in its possession.  Jenkins moved, pursuant to Rule 17 of the Federal Rules of Criminal Procedure, for a subpoena to the Mesa County Sheriff's Office to compel them to turn over the Colorado Warrant.  The court approved Jenkins' application for a subpoena *duces tecum*.  Mesa County Sheriff's Office has not complied with the subpoena *duces tecum*, stating that the Colorado Warrant is sealed.

**The Parties' Positions**

The Motion seeks an Order dismissing this case against Jenkins because the government has failed to produce a search warrant issued to the Mesa County Sheriff's Office.  Jenkins asserts that the Colorado Warrant was relied upon by the FBI to obtain the federal search warrants in this case.  He argues that he must have the Colorado Warrant to assess whether the federal warrants stated probable cause, asserting that if Colorado Warrant "is poisonous under the Fourth Amendment," the federal warrants are "poisoned."  Jenkins asserts that the Colorado Warrant is Brady material and is relevant to

1   Jenkins' guilt or innocence, and the government's failure to produce it is a Brady violation justifying
2   suppression or dismissal.
3       In response, the government asserts that the federal investigation of Jenkins and his co-
4   defendants began in 2005.  Although the Mesa County Sheriff's Office was conducting a state
5   investigation of Jenkins on unrelated charges of sexual abuse of a minor, it was not acting at the
6   direction or behest of the federal government.  The government states that as it was preparing to bring
7   the Indictment before the federal grand jury, "the Mesa County Sheriff's Office unilaterally moved
8   first" and executed the Colorado Warrant on March 23, 2007.  On April 19, 2007, federal agents
9   requested a search warrant to search Jenkins' home for evidence relevant to their investigation.  FBI
10  Special Agent Muttay's affidavit stated that the Mesa County Sheriff's Office had not seized boxes and
11  filing cabinets housing business documents and financial records that were unrelated to the state
12  investigation.  The FBI sought judicial authorization to search for and seize Jenkins' computers and
13  documents for evidence relating to the federal investigation.  However, by the time the federal search
14  warrant was obtained and executed, few items remained in Jenkins' residence.  FBI agents executing
15  the federal search warrant made a mirror image of the contents of the computers and related devices
16  seized by the Mesa County Sheriff's Office.  The government believes the computers and related
17  devices seized by the Colorado authorities are still in the custody of the Mesa County Sheriff's Office.
18  On January 8, 2008, the government applied for and was granted a third search warrant to search a
19  computer and filing cabinet in a storage facility in Potts Camp, Mississippi.  The government asserts
20  that although the Colorado Warrant was mentioned in all three affidavits, it "added nothing to the
21  probable cause calculus" and was mentioned as a "historical note peripheral to the . . . search
22  warrant[s]." Resp. at 5:8, 6:6-8.
23      Relying on Rule 16 of the Federal Rules of Criminal Procedure, the government argues that it
24  does not possess or have access to the Colorado Warrant and has not withheld or failed to produce it.
25  The government acknowledged it did not have the Colorado Warrant in status conferences conducted
26  by this court, and it did not object to Jenkins' request for a subpoena to the Mesa County Sheriff's
27  Office to produce the Colorado Warrant.  The government has no obligation to produce or obtain
28  / / /

1  information from state officials over which it has no actual control, and therefore, the government has
2  not breached its Brady obligations.
3       In response to Jenkins' alternative Motion to Suppress, the government argues that even
4  assuming the Colorado Warrant was not supported by probable cause, the separate federal warrants
5  related to a different investigation and were intervening events that dissipated any taint of the Colorado
6  Warrant.  Moreover, the Mesa County Sheriff's Office did not conduct its search of Jenkins' home at
7  the behest of the United States, but instead, acted independently and on its own initiative in an unrelated
8  state matter.  The state warrant involved a totally separate investigation of a different crime.  The
9  federal warrants were issued by federal judges who independently reviewed and determined probable
10 cause existed to search for evidence of federal crimes.  The Colorado Warrant was mentioned in the
11 context of advising the issuing judges that Colorado authorities had seized computers and related
12 equipment.  Thus, the government asserts, the Mesa County Sheriff's Office's zone of primary interest
13 was not evidence recovered pursuant to the federal search warrants.   Lastly, the government asserts
14 that even if the federal search warrants were tainted, evidence should not be suppressed because the
15 federal agents acted in good faith pursuant to United States v. Leon, 468 U.S. 897 (1984).
16      In reply, Jenkins acknowledges the United States has no duty to produce documents not in its
17 possession or control, but he asserts that because the Mesa County Sheriff's Office was acting as an
18 agent of the United States, the government does have a duty to produce the Colorado Warrant.  Jenkins
19 relies on United States v. Fort, 472 F3d 1106, 1113 for the proposition that the Mesa County Sheriff's
20 Office was, in essence, a federal agent for purposes of this case because they may have been "non-
21 federal personnel whose work contribut[ed] to a federal criminal 'case.'" Reply at 3:11-12 (citing Fort,
22 472 U.S. at 1113).  He asserts the state authorities' work "clearly contributed" to this criminal case
23 based on statements contained in the federal search warrant applications that the affiant interviewed
24 Mesa County Sheriff's Office detectives about the state search warrant they obtained and what was
25 discovered in the search of Jenkins' residence.  Jenkins requests an evidentiary hearing to determine
26 whether the United States ever had possession or control of the Colorado Warrant and/or whether the
27 Colorado authorities were acting as federal agents.
28 / / /

**DISCUSSION**

**A.     Jenkins' Motion to Dismiss for Brady Violation**

A motion to dismiss challenges the sufficiency of an indictment to charge an offense. United States v. Sampson, 371 U.S. 75, 78-79 (1962). "An indictment is sufficient if it contains the elements of the charged crime and adequate detail to inform the defendant of the charge and to enable him to plead double jeopardy." United States v. Buckley, 689 F.2d 893, 896 (9th Cir. 1982). In determining the sufficiency of the indictment, the court examines whether the indictment adequately alleges the elements of the offense and fairly informs the defendant of the charge, and not whether the government can prove its case. Id. at 897. In deciding a motion to dismiss, the court must take the allegations of the indictment as true. Boyce Motor Lines, Inc., v. United States, 342 U.S. 337, 343 n.16 (1952); United States v. Afshari, 426 F.3d 1150, 1153 (9th Cir. 2005). An indictment need not allege the government's theory of the case or supporting evidence, but it must state the essential facts necessary to apprise the defendant of the crime charged. Id.

Rule 12 of the Federal Rules of Criminal Procedure requires a defendant to challenge a defective indictment prior to trial. See Fed. R. Crim. P. 12(b)(3)(A) & (B). Rule 12(b)(2) permits a party to raise "any defense, objection, or request that the court can determine without a trial of the general issue." Id. A pretrial motion is generally "capable of determination" before trial if it involves questions of law rather than fact. United States v. Shortt Accountancy Corp., 785 F.2d 1448, 1452 (9th Cir. 1986). The trial court may make preliminary findings of fact necessary to decide the legal questions presented by the motion, but it may not invade the province of the jury in deciding a pretrial motion to dismiss. It is also well-established that "[a] motion to dismiss is not a proper way to raise a defense." United States v. Snyder, 428 F.2d 520, 522 (9th Cir. 1970).

The Supreme Court has held that the government is required to disclose to the defendant evidence "favorable to an accused upon request...where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." Brady v. Maryland, 373 U.S. 83, 87 (1963); see also Kyles v. Whitely, 514 U.S. 419, 433 (1995) (stating Brady also requires the government to disclose information never requested or requested only in a general fashion "when suppression of the evidence would be 'of sufficient significance to result in the denial of the

1  defendant's right to a fair trial'") (citing United States v. Agurs, 427 U.S. 97, 108 (1976)).  Such
2  evidence is material "only if there is a reasonable probability that, had the evidence been disclosed to
3  the defense, the result of the proceeding would have been different."  United States v. Bagley,
4  473 U.S. 667, 682 (1985) (internal citation omitted).  Here, Jenkins asserts that the government failed to
5  produce the Colorado Warrant.  However, Jenkins has failed to show that the Colorado Warrant is
6  Brady material.

7  Furthermore, the government's duty to disclose is predicated upon the government's possession
8  or control of the documents in question.  See Fed.R.Crim.Pro. 16(a)(1)(E); see also Sanchez v. United
9  States, 50 F.3d 1448, 1453 (9th Cir. 1995).  Jenkins' assertion that the Mesa County Sheriff's Office
10 acted as an agent for the United States, and therefore, the government constructively possessed the
11 Colorado Warrant is speculative at best.  Jenkins' reliance on Fort is misplaced.  There, the issue before
12 the Ninth Circuit was "whether investigative reports prepared by a local police department prior to a
13 federal prosecutor's involvement qualify for the discovery exemption created by Rule 16(a)(2) when
14 they are turned over to the federal prosecutor for use in the federal investigation and prosecution of the
15 same acts by the same people."  Id. at 1109-1110 (emphasis added).  The present case is distinguishable
16 in two ways.  First, the government affirmatively represents it does not and never has had possession of
17 the Colorado Warrant.  Second, the federal investigation and prosecution is independent of and
18 unrelated to the state investigation.  This federal prosecution involves allegations of wire fraud,
19 securities fraud, and conspiracy; the Colorado investigation involved allegations of sexual abuse of a
20 minor.  Finally, Jenkins is not entitled to an evidentiary hearing to explore his unsupported suspicions
21 that local state authorities may have been acting as federal agents.

22     **B.**    **Jenkins' Motion to Suppress**

23 The Fourth Amendment secures "the right of the people to be secure in their persons, houses,
24 papers, and effects against unreasonable searches and seizures."  U.S. Const. Amend. IV.  The Fourth
25 Amendment protects reasonable and legitimate expectations of privacy.  Katz v. United States,
26 389 U.S. 347 (1967).  The Fourth Amendment protects "people not places."  Id.  Evidence obtained in
27 violation of the Fourth Amendment, and evidence derived from it may be suppressed as the "fruit of the
28 poisonous tree."  Wong Sun v. United States, 371 U.S. 471 (1963).

1  Here, Jenkins' seeks to suppress all evidence seized by both the Mesa County Sheriff's Office
2  and federal agents. His argument that evidence seized by the Mesa County Sheriff's Office was
3  obtained in violation of the Fourth Amendment is premised on the assumption that the Colorado
4  Warrant was not supported by probable cause. Jenkins argues that because the federal warrants "rely"
5  on the Colorado Warrant, they too, are unsupported by probable cause.

6  Assuming arguendo the Colorado Search Warrant was unlawful, it does not follow that evidence
7  derived from the prior search must be suppressed. The Ninth Circuit has held that the Fourth
8  Amendment does not bar admission of evidence illegally seized in a prior investigation unless there is
9  (1) a suggestion of bad faith or collusion between law enforcement officers in the first and second
10 investigations; and (2) the officers involved in both investigations have the same "zone of primary
11 interest." United States v. Basinger, 60 F.3d 1400, 1407 (9th Cir. 1995) (citing United States v. Lopez-
12 Martinez, 725 F.2d 471, 476 (9th Cir. 1984)); see also United States v. Medina, 181 F.3d 1078, 1082
13 (9th Cir. 1999). Suppression is "unwarranted because exclusion would have a minimal deterrent
14 effect." Basinger at 1407.

15 The exclusionary rule is a judicially-created remedy intended to deter unlawful police conduct.
16 See generally Wong Sun, 371 U.S. 471. The Ninth Circuit has recognized that "[a]bsent any threshold
17 showing of a connection or 'nexus' in time, place, or purpose between the searches and the subsequent
18 prosecution, there is no appreciable deterrent purpose in suppressing the evidence." Medina at 1082.
19 For Fourth Amendment suppression analysis, "it is irrelevant . . . whether the evidence is seized by one
20 sovereign and utilized by the same or different sovereign." Id. Thus, in Lopez-Martinez, the Ninth
21 Circuit held that statements made by a defendant in a 1974 arrest by federal officers were admissible in
22 a 1982 federal trial because the agents in 1974 did not have the later 1982 proceedings in their "zone of
23 primary interest." 725 F.2d at 476. For the same reason, the Ninth Circuit held in Medina that the
24 Fourth Amendment does not require an assessment of the legality of prior searches to determine the
25 admissibility of the evidence derived by the prior searches in an unrelated case. Medina was tried and
26 convicted of ten counts of armed bank robbery and using a firearm during the commission of a violent
27 crime. He filed a motion to suppress and requested an evidentiary hearing on the lawfulness of two
28 prior state airport and traffic searches which resulted in the seizure of two guns which linked him to six

of the ten bank robberies.  The District Court denied the motion to suppress without holding an evidentiary hearing and without determining whether the airport and traffic searches were lawful.  The Ninth Circuit affirmed the trial court because "[t]he officers who performed the airport search and the vehicle search in the instant case had no knowledge or anticipation of Medina's subsequent prosecution for armed bank robbery.  In other words, they did not have the bank robbery charges within their zone of primary interest."  Id. at 1082.

In this case, there is no showing that the Colorado officers conducting the Colorado search had the charges involved in the instant case within their zone of primary interest.  There is no nexus in time, place, or purpose between the Colorado sexual abuse of a minor investigation and this federal prosecution.  Thus, even if evidence was illegally seized pursuant to the Colorado Warrant because it was not supported by probable cause, suppression of evidence seized by federal agents in this separate federal prosecution is unwarranted.  The purpose of the exclusionary rule is to safeguard Fourth Amendment rights by deterring unlawful police conduct.  Suppressing evidence seized by federal authorities in this investigation would have no deterrant effect on Colorado authorities involved in an unrelated investigation.  For these reasons,

**IT IS ORDERED** that Colombo's Motion for Joinder (Dkt. #97) is GRANTED.

**IT IS THE RECOMMENDATION** of undersigned that Jenkins Motion to Dismiss/Motion to Suppress (Dkt. #95) be DENIED.

Dated this 4th day of May, 2009.

_____
PEGGY A. LEEN
UNITED STATES MAGISTRATE JUDGE